SOUND THINKING. SOUND SOLUTIONS.

ADAM S. AFFLECK †
WILFORD A. BEESLEY III
JAMES C. BERGSTEDT
JAMES A. BOEVERS
THOMAS D. BOYLE €
GLENN R. BRONSON †
CALLIE BUYS
J. RANDALL CALL ‡ ^
JOHN S. CHINDLUND
T. EDWARD CUNDICK €
M. DAVID ECKERSLEY
THOMAS J. ERBIN
D. JAY GAMBLE
JON C. HEATON
CHRISTOPHER A. JONES†
JENNIFER R. KORB
WILLIAM G. MARSDEN

JAMES W. McCONKIE III
ROGER J. McCONKIE
SALLY B. McMINIMEE ‡
AARON B. MILLAR †
KATE M. NOEL
G. TROY PARKINSON ‡
JARED N. PARRISH
CHARLES L. PERSCHON
ALLEN SIMS
ERIN M. STONE
JAMES C. SWINDLER ^
RICHARD H. THORNTON
JONATHON T. TICHY ^
TYLER O. WALTMAN †
MATTHEW S. WIESE
ROBERT G. WING
MICHAEL N. ZUNDEL

† ALSO ADMITTED IN CALIFORNIA
‡ ALSO ADMITTED IN IDAHO
^ ALSO ADMITTED IN NEVADA
€ ALSO ADMITTED IN TEXAS

F. S. PRINCE (1910-1991)
DAVID S. GELDZAHLER (1932-1994)

ROBERT M. YEATES (RETIRED)

**FILED**

APR – 6 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
        DEPUTY CLERK

April 1, 2011

**SENT VIA FEDERAL EXPRESS**
United States District Court for the
Eastern District of California
501 I Street, Suite 4-200
Sacramento, California 95814

2:11-mc- 34  JAM KJN

Re:  SEC v. John Scott Clark, et al., Civil No. 1:11cv46 DAK

Dear Sir or Madam:

My client, Gil A. Miller of Rocky Mountain Advisory, LLC has been appointed by Judge Dale A. Kimball as the Receiver for Impact Cash, LLC and Impact Payment Systems, LLC, in the above-referenced case. This case was instituted by the Securities and Exchange Commission in the United States District Court for the District of Utah, Civil No. 1:11-cv-46 DAK.

Mr. Miller is instructed by 28 U.S.C. § 754, to file in every district where property related to the action is located, copies of the Complaint and Order appointing him Receiver within ten (10) days of the date of the Order. In this case, the Order was executed on March 25, 2011, and there appears to be property related to the case in California. In compliance with Section 754, I have enclosed a certified copy of the Complaint and the Order. Please file these documents, give the matter a case number for your Court, and date-stamp them upon receipt. The documents should bear a date-stamp of no later than April 4, 2011. I have enclosed an extra copy of these documents to be date stamped and returned to my attention in the enclosed envelope, postage prepaid.

April 1, 2011
Page 2
------------------------------------------

I have also enclosed a Civil Cover Sheet prepared by this office for this filing. It is my understanding that there is a $39.00 filing fee associated with this procedure. I have enclosed a check in that amount, made payable to your Court. Please include a copy of the date-stamped Civil Cover Sheet, and the filing receipt, in the envelope provided.

Your cooperation in this matter is very much appreciated. If you have any questions or concerns, please do not hesitate to call me. My direct line is (801) 524-1005. We will be happy to provide any additional information, materials or resources that the Court may require. Given the short deadline, your prompt attention to this matter is appreciated.

Sincerely,

**PRINCE YEATES & GELDZAHLER**

Jennifer R. Korb

JRK:cl
cc: Gil A. Miller (Letter only)
Enclosures

Thomas M. Melton (Utah State Bar No. 4999)
meltont@sec.gov
Daniel Wadley (Utah State Bar No. 10358)
WadleyD@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: 801-524-5796
Facsimile: 801-524-5262

**RECEIVED CLERK**

FILED
U.S. DISTRICT COURT MAR 25 2011

**U.S. DISTRICT COURT**
2011 MAR 25  P 1: 40

DISTRICT OF UTAH

BY: _____
DEPUTY CLERK **FILED**

APR − 4 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

---

SECURITIES AND EXCHANGE COMMISSION,

PLAINTIFF,

v.

JOHN SCOTT CLARK, IMPACT CASH, LLC a Utah
Limited Liability Company and IMPACT PAYMENT
SYSTEMS, LLC a Nevada Limited Liability Company,

DEFENDANTS.

Civil No. **1:11cv46 DAK**

Judge

2:11-MC-034 JAM KJN

**PROPOSED ORDER
APPOINTING RECEIVER,
IMPOSING ASSET
FREEZE AND
PROHIBITING
DESTRUCTION OF
DOCUMENTS**

---

## ORDER APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon motion of the Plaintiff U.S.

Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a

receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the

appointment of a receiver in this action is necessary and appropriate for the purposes of

marshaling and preserving all assets of the Defendants Impact Cash, LLC and Impact Payment

Systems, LLC ("Receivership Assets") that: (a) are attributable to funds derived from investors

or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were

fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants (collectively, the "Recoverable Assets"); and,

**WHEREAS** it appears that an order freezing assets is necessary to preserve the *status quo* and to protect this Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud and civil penalties; and

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendants: Impact Cash, LLC and Impact Payment Systems, LLC (collectively, the "Receivership Defendants") and John Scott Clark.

2.     · Until further Order of this Court, ___*Gil Miller*___ is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Defendants.

## I. Asset Freeze

3.     Except as otherwise specified herein, all Receivership Assets and Recoverable Assets are frozen until further order of this Court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets and/or any Recoverable Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but not be limited to, Receivership Assets and/or Recoverable Assets that are on deposit with financial institutions such as banks, brokerage

firms and mutual funds.

4. Defendant John Scott Clark, his agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service, or otherwise, and each of them, hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any assets, funds, or other properties (including money, real or personal property, securities, choses in action or property of any kind whatsoever) of Defendant John Scott Clark currently held by them or under their control, whether held in the name of Defendant John Scott Clark, or for their direct or indirect beneficial interest wherever situated, and directing each of the financial or brokerage institutions, debtors, and bailees, or any other person or entity holding such assets, funds, or other properties of Defendant John Scott Clark to hold or retain within its control and prohibit the withdrawal, removal, transfer, or other disposal of any such assets, funds, or other properties.

## II. General Powers and Duties of Receiver

5. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.R.Civ.P. 66.

6. The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver.

The Receiver shall assume and control the operation of the Receivership Defendants and shall

pursue and preserve all of their claims.

7.     No person holding or claiming any position of any sort with any of the

Receivership Defendants shall possess any authority to act by or on behalf of any of the

Receivership Defendants.

8.     Subject to the specific provisions in Sections III through XIV, below, the

Receiver shall have the following general powers and duties:

A.     To use reasonable efforts to determine the nature, location and value of all
property interests of the Receivership Defendants, including, but not
limited to, monies, funds, securities, credits, effects, goods, chattels, lands,
premises, leases, claims, rights and other assets, together with all rents,
profits, dividends, interest or other income attributable thereto, of
whatever kind, which the Receivership Defendants own, possess, have a
beneficial interest in, or control directly or indirectly ("Receivership
Property" or, collectively, the "Receivership Estates");

B.     To take custody, control and possession of all Receivership Property and
records relevant thereto from the Receivership Defendants; to sue for and
collect, recover, receive and take into possession from third parties all
Receivership Property and records relevant thereto;

C.     To manage, control, operate and maintain the Receivership Estates and
hold in his possession, custody and control all Receivership Property,
pending further Order of this Court;

D.     To use Receivership Property for the benefit of the Receivership Estates,
making payments and disbursements and incurring expenses as may be
necessary or advisable in the ordinary course of business in discharging
his duties as Receiver;

E.     To take any action which, prior to the entry of this Order, could have been
taken by the officers, directors, partners, managers, trustees and agents of
the Receivership Defendants;

F.     To engage and employ persons in his discretion to assist him in carrying
out his duties and responsibilities hereunder, including, but not limited to,
accountants, attorneys, securities traders, registered representatives,
financial or business advisers, liquidating agents, real estate agents,
forensic experts, brokers, traders or auctioneers;

G.     To take such action as necessary and appropriate for the preservation of

Receivership Property or to prevent the dissipation or concealment of
Receivership Property;

H.    The Receiver is authorized to issue subpoenas for documents and
testimony consistent with the Federal Rules of Civil Procedure;

I.    To bring such legal actions based on law or equity in any state, federal, or
foreign court as the Receiver deems necessary or appropriate in
discharging his duties as Receiver;

J.    To pursue, resist and defend all suits, actions, claims and demands which
may now be pending or which may be brought by or asserted against the
Receivership Estates; and,

K.    To take such other action as may be approved by this Court.

### III. Access to Information

9.    The individual Receivership Defendants and the past and/or present officers,
directors, agents, managers, general and limited partners, trustees, attorneys, accountants and
employees of the entity Receivership Defendants, as well as those acting in their place, are
hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and
electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership
Property; such information shall include but not be limited to books, records, documents,
accounts and all other instruments and papers.

10.    Within ten (10) days of the entry of this Order, John Scott Clark shall file with the
Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the
identity, location and estimated value of all Receivership Property; (b) all employees (and job
titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the
Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known
creditors of the Receivership Defendants.

11.    Within thirty (30) days of the entry of this Order, John Scott Clark shall file with
the Court and serve upon the Receiver and the Commission a sworn statement and accounting,

with complete documentation, covering the period from January 1, 2006 to the present:

A.   Of all Receivership Property, wherever located, held by or in the name of the Receivership Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

B.   Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C.   Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.   Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.   Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G.   Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.   Of all transfers of assets made by any of them.

12.   Within thirty (30) days of the entry of this Order, John Scott Clark shall provide

to the Receiver and the Commission copies of the Receivership Defendants' federal income tax

returns for 2006-2011 with all relevant and necessary underlying documentation.

13.     The individual Receivership Defendants and the entity Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

14.     To issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Fed.R.Civ.P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

15.     The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

## IV. Access to Books, Records and Accounts

16.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Defendants. All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

17.     The Receivership Defendants and John Scott Clark, as well as their agents,

servants, employees, attorneys, any persons acting for or on behalf of the Receivership

Defendants and/or John Scott Clark, and any persons receiving notice of this Order by personal

service, facsimile transmission or otherwise, having possession of the property, business, books,

records, accounts or assets of the Receivership Defendants are hereby directed to deliver the

same to the Receiver, his agents and/or employees.

18. All banks, brokerage firms, financial institutions, and other persons or entities

which have possession, custody or control of any assets or funds held by, in the name of, or for

the benefit of, directly or indirectly, and of the Receivership Defendants and/or John Scott Clark

that receive actual notice of this Order by personal service, facsimile transmission or otherwise

shall:

    A.    Not liquidate, transfer, sell, convey or otherwise transfer any assets,
securities, funds, or accounts in the name of or for the benefit of the
Receivership Defendants except upon instructions from the Receiver;

    B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-
help whatsoever, or refuse to transfer any funds or assets to the Receiver's
control without the permission of this Court;

    C.    Within five (5) business days of receipt of that notice, file with the Court
and serve on the Receiver and counsel for the Commission a certified
statement setting forth, with respect to each such account or other asset,
the balance in the account or description of the assets as of the close of
business on the date of receipt of the notice; and,

    D.    Cooperate expeditiously in providing information and transferring funds,
assets and accounts to the Receiver or at the direction of the Receiver.

## V. Access to Real and Personal Property

19. The Receiver is authorized to take immediate possession of all personal property

of the Receivership Defendants, wherever located, including but not limited to electronically

stored information, computers, laptops, hard drives, external storage drives, and any other such

memory, media or electronic storage devices, books, papers, data processing records, evidence of

indebtedness, bank records and accounts, savings records and accounts, brokerage records and

accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

20    The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

21.    In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

22.    The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

23.    Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## VI. Notice to Third Parties

24.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

25.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

26.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

27.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Defendants, and/or any mail appearing to contain privileged information, and/or any mail not falling within the

mandate of the Receiver, shall be released to the named addressee by the Receiver. The
foregoing instructions shall apply to any proprietor, whether individual or entity, of any private
mail box, depository, business or service, or mail courier or delivery service, hired, rented or
used by the Receivership Defendants. The Receivership Defendants shall not open a new
mailbox, or take any steps or make any arrangements to receive mail in contravention of this
Order, whether through the U.S. mail, a private mail depository or courier service.

28.     Subject to payment for services provided, any entity furnishing water, electric,
telephone, sewage, garbage or trash removal services to the Receivership Defendants shall
maintain such service and transfer any such accounts to the Receiver unless instructed to the
contrary by the Receiver.

### VII.  Injunction Against Interference with Receiver

29.     The Receivership Defendants and all persons receiving notice of this Order by
personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or
indirectly taking any action or causing any action to be taken, without the express written
agreement of the Receiver, which would:

        A.     Interfere with the Receiver's efforts to take control, possession, or
management of any Receivership Property; such prohibited actions
include but are not limited to, using self-help or executing or issuing or
causing the execution or issuance of any court attachment, subpoena,
replevin, execution, or other process for the purpose of impounding or
taking possession of or interfering with or creating or enforcing a lien
upon any Receivership Property;

        B.     Hinder, obstruct or otherwise interfere with the Receiver in the
performance of his duties; such prohibited actions include but are not
limited to, concealing, destroying or altering records or information;

        C.     Dissipate or otherwise diminish the value of any Receivership Property;
such prohibited actions include but are not limited to, releasing claims or
disposing, transferring, exchanging, assigning or in any way conveying
any Receivership Property, enforcing judgments, assessments or claims
against any Receivership Property or any Receivership Defendant,
attempting to modify, cancel, terminate, call, extinguish, revoke or

Page 11 of 19

accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or,

D.     Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

30.     The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

31.     The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VIII.  Stay of Litigation

32.     As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

34.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is

in effect as to that cause of action.

## IX. Managing Assets

35.     For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

36.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Impact Cash, LLC and Impact Payment Systems, LLC" together with the name of the action.

37.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

38.     Subject to Paragraph 39, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

39.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

40.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating

with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

41.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

## X. Investigate and Prosecute Claims

42.     Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

43.     Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.

44.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

45.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the

Receivership Estate.

## XI. **Bankruptcy Filing**

46.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants. If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 5 above, the Receiver is vested with management authority for all entity Receivership Defendants and may therefore file and manage a Chapter 11 petition.

47.     The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

## XII. **Liability of Receiver**

48.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

49.     The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

50.     This Court shall retain jurisdiction over any action filed against the Receiver or

Retained Personnel based upon acts or omissions committed in their representative capacities.

51.     In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record and the Court of that intention, and the resignation

shall not be effective until the Court appoints a successor.  The Receiver shall then follow such

instructions as the Court may provide.

## XIII.  Recommendations and Reports

52.     The Receiver is authorized, empowered and directed to develop a plan for the fair,

reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable

Receivership Property (the "Liquidation Plan").

53.     Within ninety (90) days of the entry date of this Order, the Receiver shall file the

Liquidation Plan in the above-captioned action, with service copies to counsel of record.

54.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall

file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status

Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the

report) the existence, value, and location of all Receivership Property, and of the extent of

liabilities, both those claimed to exist by others and those the Receiver believes to be legal

obligations of the Receivership Estates.

55.     The Quarterly Status Report shall contain the following:

   A.     A summary of the operations of the Receiver;

   B.     The amount of cash on hand, the amount and nature of accrued
          administrative expenses, and the amount of unencumbered funds in the
          estate;

   C.     A schedule of all the Receiver's receipts and disbursements (attached as
          Exhibit A to the Quarterly Status Report), with one column for the
          quarterly period covered and a second column for the entire duration of
          the receivership;

   D.     A description of all known Receivership Property, including approximate

or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.  A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.  A list of all known creditors with their addresses and the amounts of their claims;

G.  The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.  The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

56.  On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIV. Fees, Expenses and Accountings

57.  Subject to Paragraphs 58 – 64 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

58.  Subject to Paragraph 59 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

59.  The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions

for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

60. Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

61. All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

62. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

63. Each Quarterly Fee Application shall:

    A. Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

    B. Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

64. At the close of the Receivership, the Receiver shall submit a Final Accounting, in

a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

## XV. Prohibition Against Destruction of Documents

65. Receivership Defendants and Defendant John Scott Clark, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including by facsimile transmission or overnight delivery service, and each of them shall be preliminarily restrained and enjoined from destroying, mutilating, concealing, altering, or disposing of any and all items, including, but not limited to, any books, records, documents, correspondence, contracts, agreements, assignments, obligations, tape recordings, computer media or other property of the Receivership Defendants and Defendant John Scott Clark, relating to the Receivership Defendants and Defendant John Scott Clark or any of their securities, financial or business dealings.

## XVI. Identification of Aliases

66. Defendant John Scott Clark shall submit to the Court and to the Plaintiff Commission within ten (10) business days of service of this Order, information identifying all aliases, business and residence addresses, postal box numbers, telephone numbers, and facsimile numbers used by Defendant John Scott Clark.

IT IS SO ORDERED, this $\cancel{27}^{th}$ day of _March_, 2011 at _1:35_ m.

UNITED STATES DISTRICT JUDGE

I hereby certify that the annexed is a true and correct copy of a document or an electronic docket entry on file at the United States District court for the District of Utah.

# of pages _19_
Date: _3/31/11_
D. MARK JONES, Clerk
By: _____
Deputy Clerk

Thomas M. Melton (Utah State Bar No. 4999)
meltont@sec.gov
Daniel Wadley (Utah State Bar No. 10358)
WadleyD@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: 801-524-5796
Facsimile: 801-524-5262



**FILED**

APR - 4 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

---

SECURITIES AND EXCHANGE COMMISSION,

PLAINTIFF,

v.

JOHN SCOTT CLARK, IMPACT CASH, LLC a Utah
Limited Liability Company and IMPACT PAYMENT
SYSTEMS, LLC a Nevada Limited Liability Company,

DEFENDANTS.

Case: 1:11cv00046
Assigned To : Kimball, Dale A.
Assign. Date : 3/25/2011
Description: SEC v. Clark et al

**COMPLAINT**

2:11- MC-034 JAM KJN

---

Plaintiff, Securities and Exchange Commission (the "Commission"), for its

Complaint against Defendants alleges as follows:

### INTRODUCTION

1.    This matter involves an offering fraud and Ponzi scheme operated by John

Scott Clark through his companies, Impact Cash, LLC and Impact Payment

Systems, LLC, (collectively "Impact") which operated an online payday loan

company.

2.    From March 2006 through September 2010, Impact and Clark raised more

than $47 million from at least 120 investors for the purpose of funding payday

loans, purchasing lists of leads for payday loan customers, and paying the operating expenses of Impact.

3.      Clark did not deploy investor capital to make payday loans as represented, but instead diverted investor funds for his personal use. He also misappropriated investor money to fund outside business ventures and used new investor funds to pay purported profits to earlier investors.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

5.      Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

6.      Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because certain of the defendants reside in and transact business in this district.

7.      Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged

2

herein and in transactions, acts, practices, and courses of business of similar purport and object.

8.    Defendants' conduct took place in connection with the offer, purchase and/or sale of Impact securities.

## DEFENDANTS

9.    **Impact Cash, LLC, ("Impact Cash")** is a Utah limited liability company with its principal place of business in Logan, Utah. Impact Cash is an online payday loan company. Impact has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

10.   **Impact Payment Systems, LLC ("IPS")** is a Nevada limited liability company with its principal place of business in Logan, Utah. IPS was incorporated in 2004 for the purpose of providing payment processing services as a licensed third-party automated clearing house ("ACH") processor through the Federal Reserve payment processing network. IPS later transformed into an online payday loan company operating in conjunction with Impact Cash. IPS has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

11.   John Scott Clark ("Clark"), age 58, is a Utah resident living in Hyde Park, Utah. Clark is the founder and control person of Impact Cash and IPS. Clark has never been registered with the Commission or any other regulatory agency in any capacity.

3

## BACKGROUND

12. Between 2006 and 2010, Clark sold Impact securities to over 120 investors in unregistered, non-exempt transactions raising at least $47 million. Approximately $4 million of the raised funds represent money raised for equity investments in Impact. The balance of $43 million came from investors seeking to provide capital to Impact to fund payday loans.

13. Clark's representations to the equity investors were essentially identical to those made to investors seeking to fund the loans. Most investors did not know in which entity they invested and simply referred to Clark's company as Impact.

14. Clark told investors that Impact could consistently generate returns averaging at least 80% per year.

15. Clark explained to investors that Impact would create a unique LLC for each investor or investor group for the purpose of investing with Impact. The investor LLC would then enter into a Joint Operating Agreement with Impact to provide money to Impact to fund payday loans.

16. Clark assured investors that their investment capital would be segregated in a bank account owed by the investors' particular LLC.

17. Clark told investors that their capital would be used in two ways: 1) to purchase lists of borrowers that had a history of repaying payday loans and; 2) to fund payday loans for Impact customers.

18. Clark indicated to investors that their LLCs would own the borrower lists purchased with their LLCs' funds. Clark further stated that all the proceeds from

the loans would be returned to the investor's LLC minus fees that Impact would deduct for administering the loans, purchasing leads and other administrative expenses.

19.   Clark recruited investors through referrals from other investors. Many of Clark's early investors mentioned their astronomical returns to their families or business associates, who then invested with Clark.

20.   Clark also recruited investors by attending trade shows in various states, attending payday loan conferences and paying salespeople to locate potential investors to meet with Clark.

21.   Clark paid one salesperson between $500,000 and $600,000 over a four or five year period to locate potential investors and attend payday loan conferences and trade shows.

22.   Clark also paid certain individuals commissions ranging from 2% to 4% for bringing in investors to Impact.

23.   Most investors received no documentation discussing the investment in Impact.

24.   Impact did not distribute a private placement memorandum or any other document disclosing the nature of the investment or the risks involved to investors.

25.   Clark did not provide financial disclosures or audited financial statements to any investor.

26.   Clark did not seek to determine all investors' financial condition, annual income, net worth or any financial information many investors. In instances where Clark did obtain this information, it was obtained after the investment had been made.

5

27.    Clark gave equity investors stock certificates representing shares in IPS to evidence an investment. For those investors who funded the payday loans, Clark provided a Joint Operating Agreement purported entered into by IPS and the LLC formed by Impact for each group of investors for the sole purpose of funding payday loans. The Joint Operating Agreement details the fees that Impact would deduct from the proceeds of the loans.

28.    Clark provided monthly statements to investors listing principal investment amount, the purported profit and the monthly and in some cases yearly return. Account statements to customers showed annualized returns varying from 30% to more than 200%.

### Clark's Misrepresentations

29.    Contrary to the representations Clark made to investors, Impact did not utilize all investor funds to make payday loans or purchase leads.

30.    Instead, Clark used investors' funds for personal purposes and to make unauthorized investments, including a real estate investment company, a diabetes research company and an online products store.

31.    Clark failed to disclose he used new investor funds to pay purported profits to earlier investors.

32.    Clark did not segregate investor funds as represented and simply deposited investments into one large pool from which Clark withdrew funds for business and personal purposes.

33.    Clark explained to investors that repeat payday loan customers were extremely valuable because the default rate for repeat customers was much lower than for

first time customers. Clark represented that the borrower lists he sold to Impact investors were repeat customers with low default rates. This representation was false. In many instances the borrowers were not repeat customers and in other instances the borrower lists were a complete fabrication.

34. Clark also levied fictitious charges on investors deducting fees for non-existent leads.

35. Clark engaged in self-dealing by purchasing borrower leads from third parties, making undisclosed mark-ups to the costs of those leads, then purportedly selling the leads to Impact investors.

36. Clark misrepresented returns to investors. Clark routinely altered investor account statements provided to him by Impact's accounting department adjusting rates of return to create artificially high annual rates of return. The altered account statements were then sent to investors.

37. Clark's misrepresentations and omissions were material.

### The Scheme Begins to Unravel

38. Concerns about Clark began to surface in fall 2009. At that time, investors experienced difficulty in obtaining account statements from Clark.

39. Clark began to spend lavishly. He bragged about purchasing multiple vehicles worth more than $100,000 each, including at least three Mercedes Benz' and a 1963 restored Corvette. Clark installed a $25,000 home theater system in his home, purchased expensive furniture and bronze statuary, snowmobiles, and openly discussed giving large amounts of money to friends and family members.

7

40. In late 2009 and early 2010, some investors asked Clark to liquidate and return their investment. Clark repeatedly ignored the liquidation requests.

41. In late September 2010, Clark admitted to a family member and Impact investor to misappropriating investor funds, overpaying certain investors and compromising the company.

42. As a result of Clark's admission, certain Impact investors undertook a review of Impact's books and records. Those investors learned that Clark directed accounting staff to record all payday loan repayments as income rather than allocating the payments between principal, interest and fees. Clark's instructions resulted in overstated revenues and receivables in the account statements shown to investors and prospective investors.

43. After investors tallied the amount of money each group or individual had invested, it became clear that Clark had misrepresented the amount of capital he raised. Investors determined that Clark had raised significantly more investor money than was being deployed for the purpose of making payday loans.

44. Accounting records showed that Clark diverted investor money for various other business ventures, including but not limited to, a real estate investment company, a diabetes research company and an online products store.

45. Accounting records also demonstrated that Clark used new investor funds to pay earlier investors purported profits and for personal expenses.

8

## FIRST CAUSE OF ACTION
### EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD
### Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

46.     The Commission realleges and incorporates by reference the allegations
        contained in Paragraphs 1 though 45, above.

47.     Defendants, and each of them, by engaging in conduct described in
        Paragraphs 1 though 45, above, directly or indirectly, in the offer or sale of
        securities, by the use of the means or instruments of transportation or
        communication in interstate commerce or by use of the mails, with scienter,
        employed devices, schemes, or artifices to defraud.

48.     By reason of the foregoing, Defendants, and each of them, directly or
        indirectly, violated, and unless restrained and enjoined by this Court, will
        continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. §
        77q(a)(1)].

## SECOND CAUSE OF ACTION
### FRAUD IN THE OFFER AND SALE OF SECURITIES
### Violations of Section 17(a)(2) and (3) of the Securities Act
### [15 U.S.C. § 77q(a)(2) and (3)]

49.     The Commission realleges and incorporates by reference the allegations
        contained in Paragraphs 1 though 45, above.

50.     Defendants, and each of them, by engaging in the conduct described in
        Paragraphs 1 through 45, above, directly and indirectly, in the offer and sale
        of securities, by the use of the means or instruments of transportation or
        communication in interstate commerce or by use of the mails, obtained money
        or property by means of untrue statements of material fact or by omitting to
        state a material fact necessary in order to make the statements made, in light
        of the circumstances under which they were made, not misleading, and

engaged in transactions, practices, or courses of business which operate or

would operate as a fraud or deceit upon the purchaser.

51. By reason of the foregoing, Defendants, and each of them, directly or

indirectly, violated, and unless restrained and enjoined will continue to

violate, Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§

77q(a)(2) and 77q(a)(3)].

### THIRD CAUSE OF ACTION
### FRAUD IN CONNECTION WITH THE PURCHASE AND
### SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5
### thereunder [17 C.F.R. § 240.10b-5]

52. The Commission realleges and incorporates by reference the allegations

contained in Paragraphs 1 though 45, above.

53. Defendants, and each of them, by engaging in the conduct described in

Paragraphs 1 through 45, above, directly or indirectly, by the use of means or

instrumentalities of interstate commerce or use of the mails, in connection

with the purchase or sale of securities, with scienter, (1) employed devices,

schemes, or artifices to defraud; (2) made untrue statements of material fact or

omitted to state a material fact necessary in order to make statements made, in

light of the circumstances under which they were made not misleading; or (3)

engaged in acts, practices, or courses of business that operated or would

operate as a fraud and deceit upon other persons.

54. By reason of the foregoing, Defendants, and each of them, violated, and

unless restrained and enjoined will continue to violate Section 10(b) of the

Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §

240.10b-5].

### FOURTH CAUSE OF ACTION
### OFFER AND SALE OF UNREGISTERED SECURITIES
### Violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]

55. The Commission realleges and incorporates by reference the allegations
contained in Paragraphs 1 though 45, above.

56. Defendants, and each of them, by engaging in the conduct described in
paragraphs 1 through 45, above, directly or indirectly, through use of the means
or instruments of transportation or communication in interstate commerce or the
mails, offered to sell or sold securities or, directly or indirectly, or carried such
securities through the mails or in interstate commerce, for the purpose of sale or
delivery after sale.

57. No registration statement has been filed with the Commission or has been in
effect with respect to these securities.

58. By reason of the foregoing, Defendants, directly or indirectly violated, and
unless enjoined will continue to violate Sections 5(a) and 5(c) of the Securities
Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### FIFTH CAUSE OF ACTION
### OFFER AND SALE OF SECURITIES BY AN
### UNREGISTERED BROKER OR DEALER
### Violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]

59. The Commission realleges and incorporates by reference the allegations
contained in Paragraphs 1 though 45, above.

60. Defendant Clark, directly or indirectly, made use of the mails or the means or
instrumentalities of interstate commerce to effect transactions in, or to induce
or attempt to induce the purchase and sale of, securities without being
registered as a broker or dealer with the Commission or associated with a
broker-dealer registered with the Commission.

11

61.    By reason of the foregoing, Defendant Clark violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. 78o(a)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I

Issue findings of fact and conclusions of law that the Defendants committed the violations charged herein.

### II

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that preliminarily and permanently enjoin, Defendant Impact, and its officers agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Sections 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### III

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that preliminarily and permanently enjoin, Defendant Clark, and his officers agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5 thereunder.

**IV**

Issue, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders that preliminarily and permanently enjoin Defendants, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from: (A) transferring, changing, wasting, dissipating, converting, concealing, or otherwise disposing of, in any manner, any funds, assets, claims, or other property or assets owned or controlled by, or in the possession or custody of these Defendants; and (B) transferring, assigning, selling, hypothecating, or otherwise disposing of any assets of Impact.

**V**

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that preliminary and permanently restrain and enjoin Defendants, and each of them, and their officers agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored electronically or in hard-copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of the Defendants.

**VI**

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

13

## VII

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

## VIII

Grant such further equitable relief as this Court deems just, appropriate, and necessary, including, but not limited to, a freeze of assets, appointment of a receiver for Impact Cash and IPS and the acceleration of discovery, including the forthwith production of documents.

## IX

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated this 25th day of March 2011.

Respectfully submitted,

Thomas M. Melton
Daniel Wadley
Attorneys for Plaintiff
Securities and Exchange Commission

I hereby certify that the annexed is a true and correct copy of a document or an electronic docket entry on file at the United States District court for the District of Utah.

# of pages 15
Date: 3/31/11
D. MARK JONES, Clerk
By:
Deputy Clerk

14

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Securities and Exchange Commission

## DEFENDANTS

John Scott Clark, Impact Cash, LLC a Utah Limited Liability Company and Impact Payment Systems, LLC a Nevada

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Cache County, Utah**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert G. Wing & Jennifer R. Korb, Prince, Yeates & Geldzahler
175 E. 400 S., #900, SLC, UT 84111, (801) 524-1000

Attorneys (If Known)

2:11-MC-034 JAM KJN

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 754

Brief description of cause:
Violations of the anti-fraud provisions of the securities laws.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____  DOCKET NUMBER _____

DATE 3/31/11

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____